IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SUNNY R. OKORO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 19-cv-06061 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| COOK COUNTY HEALTH & HOSPITAL ) | |
| SYSTEM, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Sunny R. Okoro was formerly employed by Defendant Cook County Health and Hospital System ("CCHHS"). After working at CCHHS for about fourteen years, apparently without incident, Okoro claims that he was subjected to a series of discriminatory actions, culminating in his termination in March 2017. At no time did Okoro's union, Defendant Service Employees International Union, Local 73 ("Local 73") intervene to assist him. As a result, Okoro has brought the present action asserting claims under 42 U.S.C. § 1981 and § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, against Defendants CCHHS, Local 73, Cook County, Cook County Board of Commissioners President Toni Preckwinkle, Carlos Gomez, Carlos Alaimo, Paul Rzeszutko, and Leonard Simpson. Now before the Court are motion to dismiss by Defendants CCHHS, Cook County, and Toni Preckwinkle, and Defendant Local 73 pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Dkt. Nos. 38, 40.) For the reasons that follow, Defendants' motions are granted.

### BACKGROUND

For the purposes of the motions to dismiss, the Court accepts all well-pleaded facts in the First Amended Complaint ("FAC," Dkt. No. 33) as true and views those facts in the light most

favorable to Okoro as the non-moving party. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The FAC alleges as follows.

Okoro is an African-American man of Nigerian descent and a member of Nigeria's Ibo-speaking ethnic group. (FAC ¶ 6.) In November 1993, Okoro began working for CCHHS as a Public Health Educator under a grant-funded program. (*Id.* ¶ 17.) After funding for the program ran out in 2007, Okoro's supervisor, Defendant Gomez, informed Okoro that he would be reassigned based on seniority. (*Id.* ¶ 18.) Despite being one of the most senior Public Health Educators, Okoro was reassigned to work as a Mental Health Specialist, which was a less favorable reassignment than one given to a more junior Public Health Educator. (*Id.* ¶¶ 19, 26.)

Just four weeks after his reassignment, Defendant Alaimo falsely accused Okoro of abusing inmates and gross negligence. (*Id.* ¶ 20.) As a result, Okoro was terminated and his union, Defendant Local 73, did not object to his termination or intervene to represent him. (*Id.*) In 2008, Okoro filed a charge with the Illinois Department of Human Rights ("IDHR") claiming that he was wrongfully terminated on the basis of his race, ethnicity, and ancestry. (*Id.* ¶ 21.) After the charge was arbitrated, Okoro was awarded full reinstatement with backpay. (*Id.*) Yet Okoro claims that CCHHS refused to comply fully with the arbitration award by paying the full amount of backpay it owed him. (*Id.* ¶ 22.)

By July 2016, Okoro began to experience limitations related to spinal surgery he underwent seven years earlier. (*Id.* ¶ 25.) According to his physician, he could no longer do work that involved lifting, pushing, and prolonged standing. (*Id.*) That same month, CCHHS told Okoro that he could no longer work as a Mental Health Specialist because he did not have a master's degree and would not be able to obtain one before 2017. (*Id.* ¶ 26.) CCHHS refused to give Okoro an extension of time to complete his master's degree despite approving extensions for other non-

2

Nigerian Mental Health Specialists. (*Id.*) While CCHHS offered Okoro a storekeeper position, he was physically unable to perform the necessary work because it required substantial lifting. (*Id.* ¶ 29.) Okoro requested a reasonable accommodation that would allow him to work as a storekeeper but CCHHS refused. (*Id.* ¶ 30.) Nor could CCHHS find Okoro another job suitable for someone of his education and qualifications. (*Id.* ¶¶ 31–32.)

Unable to find Okoro suitable replacement work, CCHHS stopped paying his salary. (*Id.* ¶ 32.) Okoro informed Local 73 that he was no longer being paid, but Local 73 did not assist him in finding another position. (*Id.* ¶¶ 32, 36.) In August 2016, he wrote a letter to Defendant Preckwinkle (and copying 13 others) complaining about the discrimination he endured at CCHHS. (*Id.* ¶¶ 33–34.) In retaliation for writing the letter to Preckwinkle, Defendant Simpson, a Local 73 employee, asked Okoro to surrender his employee identification card. (*Id.* ¶ 37.) On September 7, 2016, Local 73 asked Okoro to attend a meeting with representatives of Local 73 and CCHHS at which he was presented with a "take it or leave it" separation agreement. (*Id.* ¶¶ 38–40.) Okoro refused to sign the agreement. (*Id.* ¶ 39.)

In early January 2017, Okoro discovered that he had been placed on a list to attend a mental health town hall meeting as a Mental Health Specialist. (*Id.* ¶ 43.) He was told by his supervisor, Gomez, that he was still a Mental Health Specialist and should attend all meetings and trainings. (*Id.* ¶ 44.) Gomez again confirmed Okoro's position as a Mental Health Specialist in February 2017. (*Id.* ¶ 45.) On March 8, 2017, Okoro filed another IDHR charge against CCHHS. (*Id.* ¶ 46.) Shortly thereafter, he received a "Notice of Termination of Employment" from CCHHS officially terminating his employment. (*Id.* ¶ 47.)

A hearing on Okoro's IDHR charge was held in June 2017 and was attended by CCHHS and Local 73 representatives. (*Id.* ¶¶ 48–49.) Local 73 did not defend Okoro at the hearing and

when CCHHS walked out in the middle of the hearing, Local 73 left with it. (*Id.*) Near the end of 2017, both Gomez and Local 73 told Okoro that CCHHS was still working to find another job for him. (*Id.* ¶¶ 50–51.) But when Okoro contacted Gomez in 2018, Gomez said that his superiors had advised him to discontinue all communications with Okoro. (*Id.* ¶ 52.)

## DISCUSSION

Okoro contends that Defendants discriminated against him because he was an ethnically Ibo Nigerian. He asserts three claims under 42 U.S.C. § 1981 against CCHHS, Cook County, Preckwinkle, Gomez, Alaimo, and Paul Rzeszutko based on the alleged discriminatory adverse employment actions, hostile work environment at CCHHS, and retaliation he suffered for filing IDHR charges. In addition, Okoro asserts one § 1981 claim against Local 73 and Simpson, alleging that Local 73 failed to provide him with the same level of representation as did it for non-Nigerian union members. Finally, Okoro's FAC vaguely references a claim under LMRA § 301, which Okoro confirms he intends to assert but only against Local 73.

### I.     Procedural Issues

To begin, the Court addresses certain procedural issues raised in the parties' briefs. First, the FAC names as Defendants three CCHHS employees, Gomez, Alaimo, and Rzeszutko, and one Local 73 employee, Simpson. None of those individual Defendants have been served and neither of the two motions to dismiss were filed on their behalf. Okoro acknowledges that those individual Defendants have not been served but insists that they remain in the case. Under Federal Rule of Civil Procedure 4(c), however, "[t]he plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m)." And Rule 4(m) requires a defendant to be served "within 90 days after the complaint is filed." Here, more than 90 days have passed since the unserved individual Defendants were first named in the FAC. While the present ruling on the

motions to dismiss will not apply to those individual Defendants, the Court may, on its own, dismiss them without prejudice due to Okoro's failure to timely serve them. But Rule 4(m) first requires the Court to give the plaintiff notice. Accordingly, Okoro is notified that he has failed to timely serve Gomez, Alaimo, Rzeszutko, and Simpson, and he must show good cause for his failure or they will be dismissed without prejudice.

Next, CCHHS and Preckwinkle argue that they should be dismissed as improper parties to this action. CCHHS correctly claims that it must be dismissed because it is a subdivision or department of Cook County and therefore it is not a suable entity. *E.g.*, *SEIU, Loc. 73 v. County of Cook*, No. 13 cv 2935, 2014 WL 793114, at *4 (N.D. Ill. Feb. 26, 2014) (holding that CCHHS, as a subdivision or department of Cook County, is not a suable entity separate from Cook County). And Preckwinkle claims, also correctly, that because she is named in her official capacity as President of the Cook County Board of Commissioners, Okoro's claims against her are redundant of his claims against Cook County. *E.g.*, *Wagner v. Evans*, No. 15-cv-6165, 2016 WL 397444, at *2 (N.D. Ill. Feb. 2, 2016) (dismissing official capacity claims against Preckwinkle as redundant of claims brought against Cook County). In his response to the motions to dismiss, Okoro voluntarily withdraws his claims against CCHHS and Preckwinkle. Accordingly, the Court dismisses all claims against Preckwinkle and CCHHS and the motions to dismiss are now understood to be filed on behalf of Cook County and Local 73, respectively.

## II. LMRA § 301

The Court now turns to the issue of its subject-matter jurisdiction. Originally, Cook County has moved under Rule 12(b)(1) to dismiss the LMRA § 301 claim for lack of jurisdiction because such a claim cannot be brought against a political subdivision. In response, Okoro clarifies that his LMRA § 301 claim is asserted only against Local 73. In light of that clarification,

5

Local 73 argues in its reply that this Court lacks jurisdiction over a LMRA § 301 claim against it because Okoro was a public-sector employee.

Relevant here, LMRA § 301 gives federal courts jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a). The LMRA defines "employer" to exclude "any State or political subdivision thereof." 29 U.S.C. § 152(2). Consequently, "even though a state or political subdivision may sign and be a party to a collective bargaining agreement, it remains immune from federal lawsuits arising under the collective bargaining agreement and relevant federal law." *Healy v. Metro. Pier & Exposition Auth.*, 804 F.3d 836, 841 (7th Cir. 2015). Similarly, "[p]ublic employees of the political subdivision of a state are not governed by the federal labor laws." *Bailey v. Johnson*, No. 90 C 01795, 1990 WL 77508, at *2 (N.D. Ill. May 30, 1990). Okoro's former employer is Cook County, which is a political subdivision. *Young v. Dart*, No. 14-cv-06350, 2015 WL 2448311, at *4 (N.D. Ill. May 20, 2015). That means the Court lacks jurisdiction over Okoro's § 301 claim against Local 73. *See Kirsch v. AFSCME Loc. 2645*, No. 01 C 6078, 2001 WL 1593140, at *1 (N.D. Ill. Dec. 31, 2001) ("[I]t follows from the fact that a state-government employee cannot sue her employer under the LMRA for breach of a collective bargaining agreement that she cannot sue her union for failing to represent her adequately in her claim against the employer for breach of the agreement."). Okoro's LMRA § 301 claim is therefore dismissed.

**III.  Section 1981 Claims**

Both Defendants seek to dismiss Okoro's § 1981 claims for failure to state a claim. To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

6

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

### A. Statute of Limitations

The Court first addresses Cook County's contention that Okoro's § 1981 claims against it are time barred. Normally, a plaintiff's complaint need not anticipate an affirmative defense such as the statute of limitations to survive a motion to dismiss. *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). "The exception occurs where . . . the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations." *Id.* Cook County argues that the exception applies here because § 1981 claims against state actors must be brought under 42 U.S.C. § 1983, which borrows Illinois's two-year statute of limitations for personal injury claims. In response, Okoro argues that the applicable statute of limitations is the four-year period set forth in 28 U.S.C. § 1658.

Section 1981 provides, in relevant part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). In *Jett v. Dallas Independent School District*, 491 U.S. 701, 731–35 (1989), the Supreme Court found that while § 1981 itself provides a remedy when private actors violate the statute, a plaintiff must sue under § 1983 to obtain relief for § 1981 violations committed by state actors. Since Cook County is a state actor,

7

Okoro's § 1981 claim arises under § 1983. "Prior to 1990, Congress had not adopted a statute of limitations for federal claims." *Campbell v. Forest Pres. Dist.*, 752 F.3d 665, 667 (7th Cir. 2014). Thus, for both § 1981 and § 1983 claims, courts were instructed to apply the forum state's personal-injury statute of limitations—two years in Illinois. *Id.* Since Congress's adoption of 28 U.S.C. § 1658, however, there is now a four-year statute of limitations for civil actions "arising under an Act of Congress enacted after" December 1, 1990. 28 U.S.C. § 1658; *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 371 (2004).

Shortly after the enactment of 28 U.S.C. § 1658, Congress amended § 1981 to address the Supreme Court's decision in *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989), which held that § 1981's "'right to make and enforce contracts' did not protect against harassing conduct that occurred after the formation of the contract." *Jones*, 541 U.S. at 372–73. In response, the Civil Rights Act of 1991 added subsection (b) to § 1981 to clarify that "the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Consequently, "claims based on conduct that occurred after the formation of a contract, such as wrongful-termination claims, were made possible by the addition § 1981(b)." *Campbell*, 752 F.3d at 668.

In *Jones v. R.R. Donnelley & Sons Co.*, the Supreme Court held that § 1658's four-year limitations period applies "whenever a post-1990 enactment creates a new right to maintain an action." *Jones*, 541 U.S. at 382. Accordingly, claims newly made possible by the Civil Rights Act of 1991's amendment to § 1981 are subject to the four-year statute of limitations because they arise under an Act of Congress enacted after December 1, 1990. *Id.* at 383 ("Because petitioners' hostile work environment, wrongful termination, and failure to transfer claims did not allege a

8

violation of the pre-1990 version of § 1981 but did allege violations of the amended statute, those claims 'arose under' the amendment to § 1981 contained in [the Civil Rights Act of 1991]."). Put differently, when a § 1981 claim predicated on conduct that occurred after the formation of a contract is brought against a private employer (*i.e.*, a claim brought directly under § 1981), it is subject to 28 U.S.C. § 1658's four-year statute of limitations. *Campbell*, 752 F.3d at 668.

However, there remains a question as to whether the four-year statute of limitations applies when a § 1981 claim is brought against a public employer for discrimination occurring after the formation of a contract. While such claims assert a § 1981 right, they arise under § 1983 "and, prior to 1990, the Supreme Court held repeatedly that *all* claims arising under § 1983 borrow the relevant state's personal injury statute of limitations." *Hernandez v. J. Sterling Morton High Sch., Dist. 201*, No. 18-CV-01501, 2019 WL 5963613, at *4 (N.D. Ill. Nov. 13, 2019); *see also Wilson v. Garcia*, 471 U.S. 261, 275 (1985) (directing courts to "select, in each State, the one most appropriate statute of limitations for *all* § 1983 claims" (emphasis added)). Nonetheless, just as with claims against private employers, post-formation § 1981 discrimination claims against public employers were only made possible by the Civil Rights Act of 1991's amendment to § 1981. *Hernandez*, 2019 WL 5963613, at *4. For that reason, the Court finds that Okoro's § 1981 claims against Cook County are subject to 28 U.S.C. § 1658's four-year statute of limitations, even though they are brought under § 1983. That position is consistent with the majority of courts in this District that have addressed the issue. *E.g.*, *Hernandez*, 2019 WL 5963613, at *5; *Sams v. City of Chicago*, No. 13 C 7625, 2018 WL 4679581, at *5 (N.D. Ill. Sept. 28, 2018); *Price v. N. Ill. Univ.*, No. 16-CV-9827, 2017 WL 7510924, at *3 (N.D. Ill. Dec. 14, 2017). Moreover, the Seventh Circuit has previously applied the four-year statute of limitations to

9

a § 1981 claim against a state actor, albeit in a non-precedential opinion. *See Hall v. Vill. of Flossmoor*, 520 F. App'x 468 (7th Cir. 2013).

But even under the four-year statute of limitations, it is apparent from the face of the FAC that many of the adverse employment actions about which Okoro complains occurred well outside of the limitations period. Okoro's claims are time barred to the extent they are based on his 2007 reassignment, his 2008 termination, and CCHHS's failure to comply with the arbitration award stemming from his 2008 IDHR charge. Okoro nonetheless contends that each of these time-barred adverse employment actions are part of a continuing course of discriminatory conduct directed against him. According to Okoro, because a portion of that conduct occurred within the limitations period, the Court may also consider conduct occurring outside the limitations period under the continuing violation doctrine.

The continuing violation doctrine allows courts to consider "the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period . . . for the purposes of assessing liability, so long as an act contributing to that hostile work environment takes place within the statutory time period." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002). However, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.* at 113. In this case, the three alleged adverse employment actions occurring before 2010 are undoubtedly discrete acts, each of which are subject to a limitations period that began running on the date the act occurred. *See id.* at 114 ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'"); *see also Diliberti v.*

*United States*, 817 F.2d 1259, 1264 (7th Cir. 1987) (rejecting the applicability of the continuing violation doctrine where a plaintiff has "merely alleged a continuing adverse consequence of prior unlawful conduct"). Since the present action was not filed within four years of any of those adverse employment actions, any claim based on those three actions are now time barred and will not be considered by the Court.

### B. Claims Against Cook County

Okoro has set forth three § 1981 claims based on Cook County's purported racially discriminatory actions, maintenance of a hostile work environment, and retaliation against Okoro for complaining about discrimination. Because those § 1981 claims are brought against a public employer under § 1983, that statute "provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981." *Jett*, 491 U.S. at 735. Therefore, Cook County "may not be held liable for its employees' violations of the rights enumerated in § 1981 under a theory of *respondeat superior*." *Id.* at 738. Instead, Okoro "must show that the violation of his 'right to make contracts' protected by § 1981 was caused by a custom or policy within the meaning of" *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), and its progeny. *Jett*, 491 U.S. at 735–36.

Under *Monell*, "a municipality can only be held liable when execution of its policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible for under section 1983." *Valentino v. Vill. of South Chicago Heights*, 575 F.3d 664, 674 (7th Cir. 2009). For Okoro to plead Cook County's liability sufficiently under *Monell*, he must allege that his injury was caused by: "(1) the enforcement of an express policy of [Cook County], (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage with

11

the force of law, or (3) a person with final policymaking authority." *Duminie v. Ne. Ill. Reg'l Commuter R.R. Corp.*, No. 17-cv-3030, 2020 WL 1288876, at *7 (N.D. Ill. Mar. 18, 2020) (internal quotation marks omitted). Other than a conclusory allegation that Cook County maintains "policies and/or practices that create, sustain, and proliferate a hostile and abusive work environment based on race" (FAC ¶ 76), Okoro's FAC is devoid of any factual allegations that could be construed as showing a Cook County policy or custom that caused his injury. *See Young v. Cook Cnty. Sheriff Tom Dart*, No. 14-cv-06350, 2015 WL 8536734, at *3 (N.D. Ill. Dec. 10, 2015) ("Plaintiff's pleadings must 'demonstrate the essential policy or custom' that caused the alleged constitutional deprivation." (quoting *Smith v. Chi. Sch. Reform Bd. of Trs.*, 165 F.3d 1142, 1149 (7th Cir. 1999))). Nor does he allege that any of the individual employees that caused his injury had final policymaking authority. For that reason, his § 1981 claims against Cook County are dismissed.

  Cook County asks the Court to dismiss Okoro's claims with prejudice. However, the Seventh Circuit has stated that "a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try and amend [his] complaint before the entire action is dismissed." *Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*, 895 F.3d 933, 941 (7th Cir. 2018). While the FAC is not Okoro's original complaint, this is the first time the Court has rendered a ruling dismissing his § 1981 claims under Rule 12(b)(6). Moreover, while Okoro has not currently pleaded any policy or custom on the part of Cook County giving rise to *Monell* liability, it is not apparent that he would be unable to do so if given leave to amend his complaint. For that reason, the Court dismisses the § 1981 claims against Cook County without prejudice.

### C. Claim Against Local 73

In his § 1981 claim against Local 73, Okoro alleges that the union discriminated against him by failing to adequately assist him in his dealings with CCHHS on account of his race and ethnicity. Specifically, Okoro claims that Local 73 discriminated against him by not finding him a replacement job when CCHHS told him he could no longer work as a Mental Health Specialist and then effectively terminating him by taking his employee identification card. Okoro also faults Local 73 for failing to defend him during the June 2017 hearing on his IDHR charge against CCHHS.[1]

"A union discriminates in violation of . . . § 1981 'if it discriminates in the performance of its agency function.'" *Lugo v. Int'l Brotherhood of Elec. Workers Loc. #134*, No. 15 C 03769, 2017 WL 1151019, at *4 (N.D. Ill. Mar. 28, 2017) (quoting *EEOC v. Pipefitters Ass'n Loc. Union 597*, 334 F.3d 656, 659 (7th Cir. 2003)). Here, Okoro's § 1981 claim is based on Local 73's inaction. But a union does not have an affirmative duty "to investigate and rectify discrimination by the employer." *Pipefitters*, 334 F.3d at 660. Thus, a union's inaction in the face of an employer's discrimination "does not condemn [the union] as [a] discriminator[]." *Id.* Nonetheless, a union's "selective inaction" in some circumstances can violate § 1981. *Id.* at 661. For example, a union discriminates where it refuses to investigate a black employee's grievance when it would do so if the worker were white. *Id.* A union would also violate § 1981 if it "decided as a matter of policy not to grieve complaints of discrimination by black members of the bargaining unit because the company is hostile to such complaints and the union fears that this hostility will make it harder for the union to succeed in its dealings with the company." *Id.*

---

[1] Okoro also asserts that Local 73 discriminated against him "by not assisting him in arbitration award when he was terminated in 2007." (FAC ¶ 69.) However, for the reasons discussed above, Okoro's § 1981 claim against Local 73 based on that conduct is time barred.

Okoro's factual allegations fail to support a reasonable inference that Local 73's inaction was selective, let alone motivated by racially or ethnically discriminatory animus. Aside from a conclusory allegation that "similarly situated Union members who did not share Plaintiff's ancestry were treated more favorably than Plaintiff" (FAC ¶ 68), there are no well-pleaded factual allegations describing how Local 73 treated non-Ibo (or non-Nigerian) employees more favorably. Indeed, the FAC contains no non-conclusory allegations addressing how Local 73 dealt with any of its members other than Okoro. Moreover, Okoro does not even allege that he ever asked Local 73 for assistance in any of his dealings with the CCHHS. *See Pipefitters*, 334 F.3d at 660 ("Suppose a union is lackluster, and while it will file a grievance if pressed to do so by a member of the collective bargaining unit, it will do nothing on its own initiative. We do not understand how such passivity, though it means the union will not take measures to prevent racial harassment on its own initiative, could be thought a form of racial discrimination . . . ."); *Webb v. AFSCME Council 31*, No. 19-cv-4192, 2020 WL 919260, at *2 (N.D. Ill. Feb. 26, 2020) (dismissing § 1981 claim against a union where the plaintiff failed "to give context to what grievances he made and how the Union reacted to them except that the Union 'refused to respond to his inquiries'").

At most, the FAC's allegations show that Okoro is an ethnically Ibo Nigerian and Local 73 stood by and did nothing when the CCHHS subjected him to adverse employment actions. Absent are allegations from which it can be reasonably inferred that there was any connection between Local 73's inaction and Okoro's ethnicity. Taken together, the FAC's allegations fail to raise Okoro's discrimination claim against Local 73 above a speculative level. Therefore, the § 1981 claim against the Local 73 is dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, Local 73 and Cook County's motions to dismiss (Dkt. Nos. 38, 40) are granted. Okoro's claims against the CCHHS and Preckwinkle, in her official capacity as President of the Cook County Board of Commissioners, are voluntarily dismissed. The remaining claims against Defendants Local 73 and Cook County are dismissed without prejudice. Okoro is granted leave to file an amended complaint by July 6, 2021 that remedies the pleading deficiencies with respect to Local 73 and Cook County. In addition, also by July 6, 2021, Okoro shall show cause in writing why Defendants Gomez, Alaimo, Rzeszutko, and Simpson should not be dismissed from this action because Okoro has failed to serve them within the 90-day time limit set forth in Federal Rule of Civil Procedure 4(m).

ENTERED:

Dated: June 14, 2021

Andrea R. Wood
United States District Judge