IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SUNNY R. OKORO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 19-cv-06061 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| COOK COUNTY HEALTH & HOSPITAL ) | |
| SYSTEM, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Sunny R. Okoro alleges that he was employed by Cook County Health and Hospitals System ("CCHHS") until he was subjected to a series of discriminatory actions that culminated in his termination. According to Okoro, despite his requests to Defendant Leonard Simpson, an employee with Defendant Service Employees International Union, Local 73 ("Local 73," and together with Simpson, "Union Defendants"), for assistance in his dealings with CCHHS, neither Simpson nor anyone else at Local 73 provided him any help. As a result, Okoro has brought the present action asserting claims under 42 U.S.C. § 1981 against Defendants Cook County, Dr. Carlos Quezada-Gomez, and Union Defendants, and a breach of contract claim against Cook County. Before the Court are motions to dismiss Okoro's Second Amended Complaint ("SAC") filed by Cook County, Quezada-Gomez, and Union Defendants. (Dkt. No. 67, 68, 71.) Cook County moves pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), while Quezada Gomez and Union Defendants move pursuant to Rule 12(b)(6). For the reasons that follow, Defendants' motions are granted.

**BACKGROUND**

For the purposes of the motions to dismiss, the Court accepts all well-pleaded facts in the SAC as true and views those facts in the light most favorable to Okoro as the non-moving party. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The SAC alleges as follows.

Okoro is an African-American man of Nigerian descent and a member of Nigeria's Ibo-speaking ethnic group. (SAC ¶¶ 6, 13, Dkt. No. 56.) In November 1993, Okoro began working for CCHHS as a Public Health Educator under a grant-funded program. (*Id.* ¶ 14.) After funding for the program ran out in 2007, Okoro's supervisor, Quezada-Gomez, informed Okoro that he would be reassigned based on seniority. (*Id.* ¶ 15.) Despite being one of the most senior Public Health Educators, Okoro was transferred to work as a Mental Health Specialist, which entailed a reduced salary, while a more junior Public Health Educator was retained. (*Id.* ¶¶ 11, 16.)

Just four weeks after his reassignment, a supervisor falsely accused Okoro of abusive behavior and gross negligence, which resulted in Okoro's immediate termination. (*Id.* ¶ 17.) In 2008, Okoro filed a charge of wrongful termination with the Illinois Department of Human Rights ("IDHR").[1] (*Id.* ¶ 18.) After the charge was arbitrated, Okoro was awarded full reinstatement with backpay in the amount of $58,442.24. (*Id.* ¶¶ 18–19.) Shortly thereafter, CCHHS paid Okoro $14,610.68 of the arbitration award. (*Id.* ¶ 19.) Between November 2009 and December 2017,

---

[1] With respect to the 2008 discrimination charge, the SAC first alleges that Okoro filed the charge with the Cook County Human Rights Commission and then states that a hearing on the charge was held before the IDHR. (SAC ¶ 18.) It appears that Okoro intended to allege that he filed the charge with the IDHR given that he previously alleged in the First Amended Complaint that the 2008 charge was filed with the IDHR. (First Am. Compl. ¶ 21, Dkt. No. 33.) Moreover, the SAC alleges that the matter was eventually arbitrated, and the Cook County Human Rights Commission does not provide for arbitration. *See generally* Cook Cnty. Comm'n on Hum. Rights, *Substantive and Procedural Rules Governing the Cook County Human Rights Ordinance*, https://www.cookcountyil.gov/sites/g/files/ywwepo161/files/documents/2021-12/Human%20Rights%20Rules%20Effective%20December%209%202021.pdf (last updated Dec. 9, 2021). By contrast, an IDHR charge may be arbitrated in certain circumstances. 775 ILCS 5/7B-102(E)(5).

Quezada-Gomez repeatedly promised Okoro that CCHHS would eventually pay him the remaining $43,831.68[2] of the arbitration award. (*Id.* ¶¶ 20, 22.)

In September 2015, Okoro applied for an Epidemiology position but was denied. (*Id.* ¶ 23.) Then, in July 2016, CCHHS told Okoro that he could no longer work as a Mental Health Specialist because he did not have a master's degree or a clinical license and would not be able to obtain either before 2017. (*Id.* ¶ 25.) That same month, CCHHS refused to give Okoro an extension of time to complete his master's degree or certification despite approving extensions for other non-Nigerian Mental Health Specialists. (*Id.*) Complicating Okoro's ability to find a new position at CCHHS was the fact that a 2009 back surgery precluded him from working a job that required substantial lifting. (*Id.* ¶¶ 21, 24, 28.) Okoro contacted Simpson, an employee with Local 73, to seek assistance in finding a CCHHS position that did not require lifting. (*Id.* ¶ 24.) While CCHHS offered Okoro a storekeeper position, he was physically unable to perform the necessary work because it required substantial lifting. (*Id.* ¶¶ 28–29.) Okoro requested a reasonable accommodation that would allow him to work as a storekeeper but CCHHS refused. (*Id.* ¶ 29.) Nor could CCHHS find Okoro another job suitable for someone of his education and qualifications. (*Id.* ¶¶ 30–31.)

Unable to find Okoro suitable replacement work, CCHHS stopped paying his salary. (*Id.* ¶ 31.) Okoro informed Local 73 that he was no longer being paid. (*Id.* ¶ 31.) In August 2016, he wrote a letter to Cook County Board President Toni Preckwinkle (and copying 13 others) complaining about the discrimination he endured at CCHHS. (*Id.* ¶¶ 33–34.) In retaliation for

---

[2] The Court notes that the SAC includes a minor, immaterial mathematical error in calculating the remaining balance of the arbitration award, as it alleges that Cook County continued to owe $43,831.68 even though $58,442.24 minus $14,610.68 equals $43,831.56.

3

writing the letter to Preckwinkle, Local 73 stopped assisting Okoro in finding a new position and Simpson asked him to surrender his employee identification badge. (*Id.* ¶¶ 35–36.)

Okoro filed a discrimination charge with the IDHR in March 2017. (*Id.* ¶ 37.) Between December 2017 and February 2018, Okoro periodically reached out to Quezada-Gomez and Simpson to see if either could assist him in finding a new position at CCHHS or receiving payment of the outstanding $43,831.68 of his arbitration award. (*Id.* ¶¶ 38–41.) Simpson never responded to Okoro, and Quezada-Gomez informed Okoro that he would not be receiving the remaining balance of his arbitration award. (*Id.* ¶¶ 40–41.) In March 2018, Okoro wrote another letter to Preckwinkle complaining of discrimination at CCHHS. (*Id.* ¶ 42.) Following that letter, CCHHS and Local 73 ceased all communication with Okoro, and Okoro was formally terminated as a CCHHS employee. (*Id.* ¶¶ 44–45.)

According to Okoro, Defendants discriminated against him because he is an ethnically Ibo Nigerian. Previously, this Court dismissed Okoro's First Amended Complaint pursuant to Rule 12(b)(6) for failure to state a claim but granted him leave to amend his complaint. Okoro's SAC sets forth claims of race and ethnic discrimination under 42 U.S.C. § 1981 against Cook County, Quezada-Gomez, and Union Defendants; a § 1981 retaliation claim against Cook County; a breach of promise to pay arbitration award against Cook County; and an indemnification claim against Cook County.

## DISCUSSION

Cook County asks the Court to dismiss one of Okoro's claims for lack of standing under Rule 12(b)(1) and all claims for failure to state a claim under Rule 12(b)(6). Quezada-Gomez and Union Defendants move only under Rule 12(b)(6). The Court first addresses the standing issue raised by Cook County.

## I. Standing

The SAC asserts a claim based on Cook County's failure to pay Okoro the outstanding $43,831.68 balance of the 2008 arbitration award despite repeated promises to do so. Cook County argues that Okoro's arbitration was conducted under the Illinois Human Rights Act and that statute does not provide him with a cause of action to enforce an arbitration award.[3] However, such an argument does not implicate Article III standing. *See Env't Barrier Co., LLC v. Slurry Sys., Inc.*, 540 F.3d 598, 605 (7th Cir. 2008) (observing that standing "is a word of many, too many, meanings" (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 90 (1998))).

Article III standing "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Where a plaintiff does not have Article III standing, a federal district court lacks subject-matter jurisdiction to hear his claims. *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017). By contrast, "[w]hether a cause of action exists is not a question of jurisdiction, and may be assumed without being decided." *Air Courier Conf. of Am. v. Am. Postal Workers Union AFL-CIO*, 498 U.S. 517, 523 n.3 (1991). Thus, Cook County's "standing" argument does not implicate this Court's subject-matter jurisdiction such that it must be resolved pursuant to Rule 12(b)(1) before the Court considers the adequacy of the claim under Rule 12(b)(6).

---

[3] Believing the SAC to be unclear as to the circumstances of the arbitration, Cook County made an alternative standing argument insofar as Okoro's arbitration was conducted pursuant to a collective bargaining agreement. If that were the case, Okoro would lack standing to enforce the arbitration award "because when employees are represented by a union they are not parties to either the collective bargaining agreement or any union-company arbitration." *Cleveland v. Porca Co.*, 38 F.3d 289, 296–97 (7th Cir. 1994). But given that the SAC alleges that Local 73 "did not intervene to represent" Okoro, the Court reasonably infers that the arbitration was not pursuant to a collective bargaining agreement.

II.     **Rule 12(b)(6)**

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

A.      **Statute of Limitations**

All three motions to dismiss make various arguments seeking dismissal of the SAC on statute of limitations grounds. Most of Defendants' timeliness arguments are based on their contention that, because the § 1981 claims are brought under 42 U.S.C. § 1983, they are governed by Illinois's two-year statute of limitations for personal injury claims like any other § 1983 claim. Of course, when it dismissed Okoro's FAC, this Court held that because the § 1981 claims are predicated on conduct that occurred after the formation of a contract, they are subject to 28 U.S.C. § 1658's ***four***-year statute of limitations. That conclusion is now the law of the case and Defendants give the Court no reason to revisit it. *See Kovacs v. United States*, 739 F.3d 1020, 1024 (7th Cir. 2014) ("The law-of-the-case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." (internal quotation marks omitted)). While Defendants identify some potential statute of limitations issues even under the four-year limitations period, the Court will not address any remaining timeliness issues unless it determines that Okoro can otherwise state a cognizable

6

claim. *See Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1030 (7th Cir. 2004) ("[B]ecause the period of limitations is an affirmative defense it is rarely a good reason to dismiss under Rule 12(b)(6).").

### B. Section 1981 Claims

Okoro asserts § 1981 claims against Cook County based on its purported racially discriminatory actions, maintenance of a hostile work environment, and retaliation against Okoro for complaining about discrimination. In addition, Okoro claims that Quezada-Gomez and Union Defendants also discriminated against him on the basis of his race and ethnicity, and accordingly brings § 1981 claims against them as well.

#### *i. Cook County*

Because Okoro's § 1981 claims against Cook County are brought against a public employer under § 1983, that statute "provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989). Therefore, Cook County "may not be held liable for its employees' violations of the rights enumerated in § 1981 under a theory of *respondeat superior*." *Id.* at 738. Instead, Okoro "must show that the violation of his 'right to make contracts' protected by § 1981 was caused by a custom or policy within the meaning of" *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), and its progeny. *Jett*, 491 U.S. at 735–36.

Under *Monell*, "a municipality can only be held liable when execution of its policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible for under section 1983." *Valentino v. Vill. of South Chicago Heights*, 575 F.3d 664, 674 (7th Cir. 2009). For Okoro to plead Cook County's liability sufficiently under *Monell*, he must allege that

7

his injury was caused by: "(1) the enforcement of an express policy of [Cook County], (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) a person with final policymaking authority." *Duminie v. Ne. Ill. Reg'l Commuter R.R. Corp.*, No. 17-cv-3030, 2020 WL 1288876, at *7 (N.D. Ill. Mar. 18, 2020) (internal quotation marks omitted).

Previously, this Court dismissed Okoro's § 1981 claims against Cook County because the FAC did not contain anything other than conclusory allegations concerning Cook County's supposed maintenance of racially discriminatory policies and practices. Instead of remedying that deficiency in the SAC by including well-pleaded facts of a Cook County policy or custom, Okoro instead supplies more conclusory allegations. Essentially, Okoro lists various instances of wrongful conduct directed against him and states that the conduct stemmed from a discriminatory policy, practice, or custom. *See Petropolous v. City of Chicago*, 448 F. Supp. 3d 835, 841 (N.D. Ill. 2020) (rejecting a *Monell* claim where, "[a]fter describing what happened to the Plaintiffs, the complaint merely recites the generic elements of a *Monell* claim"); *Carmona v. City of Chicago*, No. 15-CV-462, 2018 WL 306664, at *2 (N.D. Ill. Jan. 5, 2018) ("Courts in this District regularly dismiss *Monell* claims where the plaintiff has failed to allege instances of misconduct other than that from which he suffered.").

The SAC does allege that Okoro's termination was caused by a person with final policymaking authority: either Preckwinkle or Quezada-Gomez. For an individual to be deemed a final policymaker for *Monell* purposes, "the mere unreviewed discretion to make hiring and firing decisions" is not enough. *Kujawski v. Bd. of Comm'rs of Bartholomew Cnty.*, 183 F.3d 734, 739 (7th Cir. 1999). Rather, "[t]here must be a delegation of authority to set policy for hiring and firing, not a delegation of only the final authority to hire and fire." *Id.* Yet the SAC contains no

8

allegations whatsoever as to either Quezada-Gomez's or Preckwinkle's authority to set policy for hiring and firing. Even assuming that Preckwinkle, as Cook County Board President, was a final policymaker, the SAC's allegations do not support any inference that Preckwinkle had anything to do with Okoro's termination. Okoro apparently assumes that Preckwinkle ordered his termination after receiving his two letters complaining of discrimination at CCHHS. But he fails to plead any other facts tying Preckwinkle to his termination other than her receipt of his letters. Moreover, Okoro alleges that he copied several others on his complaint letters, and thus it is equally (if not more) plausible that one of those other individuals was responsible for Okoro's alleged retaliatory termination.

In sum, Okoro fails to offer anything more than conclusory allegations of Cook County's maintenance of a discriminatory policy or custom. Nor do the SAC's allegations show any deprivation of Okoro's constitutional rights caused by a person with final policymaking authority. For that reason, Okoro fails to plead a *Monell* claim and his § 1981 claims against Cook County are dismissed.

### ii. *Quezada-Gomez*

Okoro also seeks to hold Quezada-Gomez liable for discrimination under § 1981 but fails to specify whether he seeks to hold Quezada-Gomez liable in his official or individual capacity. Since an official capacity claim would be redundant of the now dismissed claims against Cook County, *see Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011) ("[A]n official capacity suit is another way of pleading an action against an entity of which the officer is an agent."), the Court will construe Okoro's claim against Quezada-Gomez as an individual-capacity claim.

9

To state a § 1981 claim against Quezada-Gomez, Okoro must adequately plead Quezada-Gomez's personal involvement in the alleged discrimination. *McQueen v. City of Chicago*, 803 F. Supp. 2d 892, 901 (N.D. Ill. 2011). "A defendant may be personally liable if he acquiesced in some demonstrable way to the alleged constitutional deprivation or if the conduct causing the constitutional deprivation occurred at his direction or with his knowledge and consent." *Id.* (internal quotation marks and citation omitted). Here, the SAC's allegations do not show that Quezada-Gomez participated in the alleged discrimination. According to Okoro, Quezada-Gomez discriminated against him by terminating him from his Mental Health Specialist position and declining to allow him an extension of time to complete his master's degree or certification. Yet the SAC's allegations show that it was CCHHS that informed Okoro he was no longer qualified to work as a Mental Health Specialist and refused to allow him additional time to obtain the requisite qualifications. (*See* SAC ¶ 25.) By contrast, Quezada-Gomez simply informed Okoro of CCHHS's decision. *See Togba v. County of Cook*, 48 F. Supp. 2d 1104, 1112 (N.D. Ill. 1999) (dismissing a § 1981 claim where the allegations showed only that the defendant "was the individual in the [employer's] hierarchy responsible for communicating personnel decisions to [the plaintiff]"). Further, the SAC contains no non-conclusory allegations from which the Court can infer that Quezada-Gomez had any racially or ethnically discriminatory animus. *See, e.g.*, *Lugo v. Int'l Bhd. of Elec. Workers Loc. #134*, 175 F. Supp. 3d 1026, 1040 (N.D. Ill. 2016) (dismissing § 1981 claims where the allegations did not support "an inference, or even suggestion, that any employment decision made by [the plaintiff's] supervisor was based on racial animus"). For these reasons, the § 1981 claim against Quezada-Gomez is dismissed.

### *iii.* *Union Defendants*

For his § 1981 claims against Union Defendants, Okoro alleges that both Local 73 and Simpson discriminated against him by failing to assist him adequately in his dealings with CCHHS on account of his race and ethnicity. Specifically, Okoro claims that Union Defendants discriminated against him by not finding him a replacement job when CCHHS told him he could no longer work as a Mental Health Specialist and then effectively terminating him by taking his employee identification card. Further, Okoro faults Union Defendants for failing to assist him in collecting his arbitration award as promised.

"A union discriminates in violation of . . . § 1981 'if it discriminates in the performance of its agency function.'" *Lugo v. Int'l Bhd. of Elec. Workers Loc. #134*, No. 15 C 03769, 2017 WL 1151019, at *4 (N.D. Ill. Mar. 28, 2017) (quoting *EEOC v. Pipefitters Ass'n Loc. Union 597*, 334 F.3d 656, 659 (7th Cir. 2003)). Here, Okoro's § 1981 claim is based on Union Defendants' failures to act. But a union does not have an affirmative duty "to investigate and rectify discrimination by the employer." *Pipefitters*, 334 F.3d at 660. Thus, a union's inaction in the face of an employer's discrimination "does not condemn [the union] as [a] discriminator[]." *Id.* Nonetheless, a union's "selective inaction" in some circumstances can violate § 1981, such as where the union would have taken action for an employee of a different race than the plaintiff. *Id.* at 661.

In dismissing the FAC, this Court concluded that Okoro had failed to state a § 1981 claim against Local 73 because it could not reasonably infer a connection between Okoro's race and Local 73's inaction. Yet the SAC does nothing to remedy those previously identified deficiencies. Once again, the SAC's allegations show only that Okoro was an ethnically Ibo Nigerian and Union Defendants stood by and did nothing in the face of CCHHS's adverse employment actions.

11

As with the FAC, the SAC contains no well-pleaded factual allegations describing how Union Defendants treated non-Ibo (or non-Nigerian) employees more favorably. Consequently, the § 1981 claims against Union Defendants are dismissed.

### C. Breach of Promise to Pay Arbitration Award

The SAC also contains a claim against Cook County alleging a breach of its renewed promise to pay the $43,831.68 balance of the arbitration award. Okoro states that his claim is not based on the arbitration award itself but on Cook County's repeated oral promise (made through Quezada-Gomez) to pay Okoro that sum. Accordingly, the Court does not understand Okoro as bringing a claim to enforce an arbitration award but rather as alleging a breach of an oral contract.

In Illinois, a breach of contract claim requires a plaintiff first to plead the existence of a valid and enforceable contract. *Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 786 (7th Cir. 2015). To do so, a plaintiff must plead offer, acceptance, and consideration. *Zemke v. City of Chicago*, 100 F.3d 511, 513 (7th Cir. 1996). Here, Cook County's promise was to pay a sum it already owed by virtue of the earlier arbitration award. However, "[t]he preexisting duty rule provides that where a party does what it is already legally obligated to do, there is no consideration because there has been no detriment." *DiLorenzo v. Valve & Primer Corp.*, 807 N.E.2d 673, 679 (Ill. App. Ct. 2004). Therefore, Cook County's promise to pay a preexisting obligation did not give rise to a separate, enforceable contract. Accordingly, Okoro's breach of contract claim is dismissed.

### D. Indemnification

Lastly, the SAC asserts a claim for indemnification against Cook County. Under 745 ILCS 10/9-102, "[a] local public entity is empowered and directed to pay any tort judgment or settlement for compensatory damages (and may pay any associated attorney's fees and costs) for which it or an employee while acting within the scope of his employment is liable." As discussed

above, Okoro has failed to state a cognizable claim against either Cook County or any of its employees. For that reason, Okoro's indemnification claim necessarily fails.

### III. Dismissal With Prejudice

Having concluded that Okoro has failed to plead a single claim upon which relief may be granted, the SAC is dismissed. Defendants request that this Court's dismissal this time be with prejudice. Because Okoro failed to remedy the deficiencies this Court previously identified in dismissing the FAC and makes little progress toward stating a viable claim in the SAC, the Court agrees that the SAC should be dismissed with prejudice.

### CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss (Dkt. Nos. 67, 68, 71) are granted and the SAC is dismissed with prejudice.

ENTERED:

Dated: April 28, 2022

_____
Andrea R. Wood
United States District Judge